UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

LINDA L. WHITE,

    Plaintiff,

                                                     **Civil Action 2:17-cv-1063**
                                                   **Judge Algenon L. Marbley**
    v.                                            **Magistrate Judge Chelsey M. Vascura**

**COMMISSIONER OF SOCIAL SECURITY,**

    Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff, Linda L. White ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for a period of disability benefits, disability insurance benefits, and supplemental security income. This matter is before the undersigned for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 9), the Commissioner's Response in Opposition (ECF No. 11), and the administrative record (ECF No. 8). For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

    **I.**        **BACKGROUND**

Plaintiff protectively filed her application for a period of disability and disability insurance benefits on September 22, 2014. She also protectively filed an application for supplemental security income on October 8, 2014. In both applications, Plaintiff alleged a disability onset date of June 1, 2014. Plaintiff's applications were denied initially on December

22, 2014, and upon reconsideration on March 12, 2015. Plaintiff sought a hearing before an administrative law judge. Administrative Law Judge Joseph Vallowe ("ALJ") held a video hearing on March 6, 2017, at which Plaintiff, represented by counsel, appeared and testified. Vocational expert Robert A. Mosely, Ph.D. (the "VE") also testified at the video hearing. On March 22, 2017, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. On October 12, 2017, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. Plaintiff then timely commenced the instant action.

In her Statement of Errors (ECF No. 9), Plaintiff raises two issues. First, Plaintiff asserts that the ALJ failed to account for her mild mental limitations in his residual functional capacity ("RFC") determination and in the hypothetical question proposed to the VE. (*Id.* at 2-5.) Significantly, within this contention of error, Plaintiff advises that she does not challenge the ALJ's analysis of her mental impairments or the weight assigned to the relevant evidence. (*See id*. at 2 ("[L]et it be stated clearly that this issue does not involve an attack on the ALJ's analysis of Plaintiff's mental impairments or any re-weighing of the evidence.").) She only challenges the ALJ's alleged failure to account for her mild mental impairments in his RFC findings. Second, Plaintiff asserts that the ALJ erred by failing to include specific functional limitations in the RFC to account for Plaintiff's severe migraine headaches. (*Id.* at 5)

## II. THE ADMINISTRATIVE DECISION

On March 22, 2017, the ALJ issued his decision. (R. at 15-26.) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantial

---

1. Social Security Regulations require ALJs to resolve a disability claim through a five-step

2

gainful activity since June 1, 2014, the alleged onset date. (*Id.* at 17.)

At step two, the ALJ found that Plaintiff had the severe impairments of discogenic and degenerative disorder of the spine; migraine headaches; carpal tunnel syndrome; chronic obstructive pulmonary disease; and osteoarthritis of the knee, back, and ankles. (*Id.*) He further found that Plaintiff had the non-severe impairments of obesity, hypertension, hyperlipidemia, and depression. (*Id.* at 17-18.) As to depression, the ALJ concluded that Plaintiff's "medically determinable mental impairment of depression does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere." (*Id.* at 18.) In concluding that Plaintiff's depression is nonsevere, the ALJ considered the four areas of mental functioning set out in the disability regulations and in the Listing of Impairments, which are known as the "paragraph B" criteria. (*Id.*) The ALJ

---

sequential evaluation of the evidence. *See* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

explained his "paragraph B" criteria findings as follows:

> The first functional area is understanding, remembering, or applying information. In this area, the claimant has mild limitation. The claimant alleged that she has difficulty taking medications without reminders. However, the claimant also stated that she could prepare meals, pay bills, shop, drive, and read. In addition, the record shows that the claimant was able to provide information about her health, describe her prior work history, follow instructions from healthcare providers, comply with treatment outside of a doctor's office or hospital, respond to questions from medical providers, and there is [sic] any mention of any issues with the claimant's short- or long-term memory.
>
> The next functional area is interacting with others. In this area, the claimant has mild limitation. The claimant did not allege any problems related to this domain. However, according to her statements, the claimant is also able to get along with others, shop, spend time with friends and family, and live with others. Finally, the medical evidence shows that the claimant has a good rapport with providers, was described as pleasant and cooperative, had good interactions with non-medical staff, and appeared comfortable during appointments.
>
> The third functional area is concentrating, persisting, or maintaining pace. In this area, the claimant has mild limitation. The claimant contended that she has limitations in focusing generally and following instructions. On the other hand, the claimant said that she is also able to prepare meals, watch TV, read, manage funds, and use the internet. Additionally, the record fails to show any mention of distractibility.
>
> The fourth functional area is adapting or managing oneself. In this area, the claimant has mild limitation. The claimant did not allege any symptoms or limitations that relate to this criterion. Furthermore, the claimant also stated that she is able to handle self-care and personal hygiene. Meanwhile, the objective evidence in the record showed the claimant to have appropriate grooming and hygiene, no problem getting along well with providers and staff, normal mood and affect, and no problems with temper control.
>
> Because the claimant's medically determinable mental impairment causes no more than "mild" limitation in any of the functional areas, it is nonsevere (20 CFR 404.1520a(d)(1) and 416.920a(d)(1)).

(R. at 18.)

The ALJ also specifically explained that:

The limitations identified in the "paragraph B" criteria are not a residual functional

> capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, the following residual capacity assessment reflects the degree of limitation I have found in the "paragraph B" mental function analysis.

(R. at 19.)

The ALJ further explained that he assigned great weight to the opinion of Haley K. O'Connell, Psy.D., in determining that Plaintiff's mental health impairments were not severe. (*Id.*) Dr. O'Connell performed a consultative psychological evaluation of Plaintiff on November 4, 2014, and diagnosed Plaintiff with unspecified depressive disorder. The ALJ summarized Dr. O'Connell's opinions as follows:

> [D]espite mild and apparently transient difficulties, [Plaintiff] appears to maintain the capacity for understanding, remembering and carrying out instructions. She would have no difficulties maintaining attention and concentration or completing even moderately difficult tasks. She maintains the capacity to respond appropriately to supervision, coworkers and work pressures in a work setting.

(*Id.*) The ALJ also assigned great weight to the State Agency psychological consultants' opinions that Plaintiff's mental health impairments were *not* severe. (*Id.*)

At step three of the sequential process, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 19-20.) At step four, the ALJ set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except: She can occasionally lift and carry ten pounds and frequently lift and carry less than ten pounds. She requires the option to change positions from sitting to standing to walking every 20 minutes as needed, but is predominately sedentary six hours of the day, standing for 2 hours, and

walking for 2 hours. She can push or pull within the lifting and carrying limitations. She can operate foot controls with the right foot frequently. She can frequently operate hand controls with the bilateral hands. She can handle items frequently with the left hand, and can handle items frequently with the right hand. She has fingering limitations frequently with the left hand, and has fingering limitations frequently with the right hand. She can climb ramps and stairs occasionally. She can never climb ladders, ropes or scaffolds. She can frequently balance and stoop. She can occasionally kneel, crouch or crawl. She can never work at unprotected heights, around moving mechanical parts or operate a motor vehicle. She should avoid dust, odor, fumes and pulmonary irritants.

(R. at 20-21.) The ALJ explained that he assessed Plaintiff's RFC based on all the evidence in the record, including Plaintiff's alleged symptoms and the extent to which they can reasonably be accepted as consistent with the objective medical evidence and other evidence. (*Id.* at 21.) The ALJ specifically considered Plaintiff's mental impairments and found that her "symptoms are mild and she has not sought psychiatric treatment." (*Id.* at 24.) He concluded that the "[e]vidence of record regarding the claimant's daily activities is consistent with a residual functional capacity for sedentary work." (*Id.* at 24-25.) As to her migraines, the ALJ noted that they were controlled with medication. (*Id.* at 22.)

Relying on the VE's testimony, the ALJ found that Plaintiff can perform her past relevant work as a customer service representative. (*Id.* at 25.) He therefore concluded that Plaintiff was not disabled under the Social Security Act. (*Id.*)

### III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by

6

substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## IV. ANALYSIS

As set forth above, Plaintiff advances the following two contentions of error: (1) the ALJ erred by failing to account for her nonsevere mental limitations in his RFC determination and in the hypothetical question to the VE; and (2) the ALJ erred by failing to account for her severe

migraine headaches in his RFC determination and the hypothetical question to the VE. The undersigned considers Plaintiff's contentions of error in turn.

A. **The ALJ's Consideration of Plaintiff's Mental Impairments**

Plaintiff contends that the ALJ erred by failing to account for her mental functional limitations in his RFC findings and in the hypothetical question presented to the VE. (Pl.'s Statement of Errors at 2, ECF No. 9). More specifically, Plaintiff asserts that, because the ALJ found mild limitations in the four "paragraph B" areas of mental functioning, he was required to account for those limitations in her RFC and in the hypothetical question presented to the VE. The Commissioner counters that "the ALJ properly considered the evidence relating to Plaintiff's mental impairment (depression) and concluded that it resulted in only mild mental deficiencies, which would not functionally limit Plaintiff's ability to perform mental work activities on a sustained basis." (Def.'s Mem. in Opp. 4, ECF No. 14.) The Commissioner further asserts that the record evidence supports the ALJ's decision to omit mental functional limitations from the RFC. (*Id.* at 6-9.) The undersigned agrees with the Commissioner and finds Plaintiff's first contention of error to be without merit.

Plaintiff correctly points out that in assessing her RFC, the ALJ must consider the limiting effects of both her severe and nonsevere impairments. *See Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003) (citing 20 C.F.R. § 404.1545(e)). Contrary to Plaintiff's contention, however, the ALJ's determination that she had mild impairment does not *require* inclusion of mental limitations in the RFC. *See, e.g.*, *Little v. Comm'r of Soc. Sec.*, No. 2:14-cv-532, 2015 WL 5000253, at *13-14 (S.D. Ohio Aug. 24, 2015) (finding no error where ALJ did not include RFC limitations to address findings of mild mental limitations); *Caudill v.*

8

*Comm'r of Soc. Sec.*, No. 2:16-CV-818, 2017 WL 3587217, at *5 (S.D. Ohio Aug. 21, 2017) (finding that mild mental impairment does not require inclusion of mental limitations in RFC); *Walker v. Astrue*, No. 3:11-cv-142, 2012 WL 3187862, at *4-5 (S.D. Ohio Aug. 3, 2012) (finding that substantial evidence supported the ALJ's determination that the claimant's mental impairments were mild enough not to warrant specific RFC limitations); *see also* 20 C.F.R. § 404.1520a(d)(1) ("If we rate the degrees of your limitation as 'none' or 'mild,' we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities . . . ."). Indeed, regardless of whether an impairment is severe or nonsevere, an ALJ need only include limitations arising from an impairment if it affects a claimant's capacity to work. *See Griffeth v. Comm'r*, 217 F. App'x 425, 426 (6th Cir. 2007) ("The RFC describes the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from—though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities. A claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other." (internal quotation marks and citations omitted)).

Here, the ALJ properly considered Plaintiff's nonsevere mental impairments in assessing her RFC and concluded that limitations attributable to her mental impairments were not warranted. (*See* R. at 19 (stating "the following residual functional capacity assessment reflects the degree of limitation [the ALJ] ha[s] found in the 'paragraph B' mental function analysis").) The ALJ thoroughly explained the grounds for his RFC determination, which included consideration of Plaintiff's allegations and hearing testimony, treatment history/lack of treatment history, the opinions of Drs. O'Connell, Tangeman, and Goldsmith, and a function-by-function

9

discussion of the "paragraph B" criteria. (*See Id.* at 18-19, 20-22, and 24-25.) As explained above, the ALJ assigned great weight to the opinions of Drs. O'Connell, Tangemen, and Goldsmith, none of whom opined that Plaintiff's RFC included nonexertional limitations. (*Id.* at 19.)

Plaintiff does not point to any record evidence that detracts from the ALJ's decision to omit specific mental limitations from her RFC. Based on the foregoing, the undersigned concludes that the ALJ properly considered Plaintiff's mental impairments in assessing her RFC and that substantial evidence supports the ALJ's decision to omit nonexertional limitations attributable to her mental impairments.

Plaintiff's challenge to the validity of the hypothetical question posed to the VE likewise lacks merit. The regulations permit an ALJ to use the services of a vocational expert at step four to determine whether a claimant can do her past relevant work given her RFC. 20 C.F.R. § 404.1560(b)(2). "In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010). "[I]n formulating a hypothetical question, an ALJ is only required to incorporate those limitations which he has deemed credible." *See Gant v. Comm'r of Soc. Sec.*, 372 F. App'x 582, 585 (6th Cir. 2010) (citations omitted); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) ("It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact."); *Infantado v. Astrue*, 263 F. App'x 469, 477 (6th Cir. 2008) (holding that the failure to

incorporate limitations into the hypothetical question that the court gave no weight was not in error). Here, the ALJ incorporated the limitations that he found to be credible and supported by the record evidence in the hypothetical question to the VE. Moreover, as explained above, substantial evidence supports the ALJ's decision to omit nonexertional limitations. The ALJ therefore did not err in relying on the VE's testimony.

In sum, the undersigned finds Plaintiff's first contention of error to be without merit. It is therefore **RECOMMENDED** that Plaintiff's first contention of error be **OVERRULED**.

## B. The ALJ's Consideration of Plaintiff's Severe Migraines

The undersigned is also not persuaded by Plaintiff second contention of error, that the ALJ erred in failing to include specific functional limitations in the RFC to account for her severe migraines. (Pl.'s Statement of Errors at 5, ECF No. 9.) According to Plaintiff, the ALJ erred in failing to include limitations to accommodate her "concentration problems," such as "breaks, rest periods, or stress avoidance." (*Id.*) The Commissioner counters that the ALJ considered Plaintiff's migraines, and "to the extent he found the evidence supported limitations, he accounted for such in the RFC findings. (Def.'s Mem. in Opp. at 10, ECF No. 14.)

As set forth above, regardless of whether an impairment is severe or nonsevere, an ALJ need only include limitations in the RFC where the impairment affects the claimant's capacity to work. *See Griffeth*, 217 F. App'x at 426. Here, substantial evidence supports the ALJ's decision to omit additional limitations related to Plaintiff's migraines. For example, the ALJ noted that Plaintiff testified that her "migraines were controlled with medication" and that she does not experience side effects for her medication. (R. at 22.) Consistent with the ALJ's acknowledgement, review of the hearing testimony reveals that Plaintiff testified that she has not

11

"had a migraine for quite some time now because [she] take[s] medicine for that too." (*Id.* at 45.) In fact, Plaintiff testified that the last time she remembered having a migraine was many years ago when she was working for AT&T.[2] (*Id.* at 46.) Thus, the undersigned concludes that substantial evidence supports the ALJ's rejection of the additional limitations related to migraines that Plaintiff seeks to include in the RFC.

Because substantial evidence supports the ALJ's decision to omit additional functional limitations attributable to Plaintiff's alleged migraines, the hypothetical to the VE was proper and serves as substantial evidence that Plaintiff can perform her past work as a customer service representative. *Ealy*, 594 F.3d at 516 ("In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments.").

Accordingly, the undersigned finds Plaintiff's second contention of error to be without merit. It is therefore **RECOMMENDED** that Plaintiff's second contention of error be **OVERRULED**.

## V. DISPOSITION

From a review of the record as a whole, the undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

---

2 The record reflects that Plaintiff worked for AT&T from 1999-2010. (R. at 243.)

## VI. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

    /s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE